Joshua N. Eppich
Texas Bar I.D. No. 24050567
J. Robertson Clarke
Texas Bar I.D. No. 24108098
Bryan C. Assink
Texas Bar I.D. No. 24089009
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: robbie.clarke@bondsellis.com
Email: bryan.assink@bondsellis.com

**PROPOSED COUNSEL FOR
THE DEBTOR AND DEBTOR-IN-POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| ALAMO BORDEN COUNTY 1, LLC, | § | CASE NO. 21-42440-MXM |
| | § | |
| Debtor.[1] | § | |
| | § | |

**DECLARATION OF SHU RAU IN SUPPORT OF
DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTIONS**

I, Shu Rau, hereby submit this declaration (the "Declaration") pursuant to 28 U.S.C. § 1746, under penalty of perjury:

1. My name is Shu Rau. I am over the age of twenty-one and am competent to make this Declaration.[2]

2. I am the Chief Executive Officer of Alamo Borden County, 1, LLC (the "Debtor" or the "Company"), in the above-captioned chapter 11 case (the "Chapter 11 Case"). In such

---

[1] The Debtor's address is 1101 N. Little School Road, Arlington, Texas 76017.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings given them in their corresponding motion and those definitions shall be incorporated herein.

capacity, I am familiar with the Debtor's day-to-day operations and financial affairs.

3. I submit this Declaration in support of the Debtor's voluntary petition for relief under chapter 11 of the Bankruptcy Code and the relief requested in the following expedited motions filed by the Debtor in connection with its bankruptcy petition (collectively, the "First Day Motions"):

a) *Expedited Motion for Order Extending Time to File Schedules of Assets and Liabilities, Statement of Financial Affairs, and Other Documents*;

b) *Expedited Motion Authorizing Payment of Certain Pre-Petition Claims of Critical Vendors*;

c) *Expedited Motion for an Interim and Final Order (I) Authorizing Maintenance of Existing Bank Account and Cash Management System; (II) Authorizing Continued Use of Existing Business Forms and Records; (III) Waiving the Requirements of 11 U.S.C. § 345(b); and (IV) Related Relief*;

d) *Expedited Motion for Order: (I) Authorizing Debtor to Use Proceeds from the Sale of Certain Crude Oil in the Ordinary Course of Business; and (II) Authorizing and Directing Sunoco to Transfer Certain Escrowed Proceeds and Tender Certain Future Proceeds to the Debtor's Operating Account*; and

e) *Motion for Expedited Consideration of First Day Motions*.

4. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my personal interaction with fellow members of the Debtor's management and other of the Debtor's advisors, my review of relevant documents, business records, and my experience and knowledge of the Debtor's operations and financial condition. I am authorized to submit this Declaration on behalf of the Debtor, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## I.    BACKGROUND

### A.    History of Alamo Borden County 1, LLC

5. The Debtor was formed in May 2019 to acquire certain oil and gas leasehold interests in Borden County, Texas.

6. Specifically, by way of a Purchase and Sale Agreement dated May 15, 2019, the Debtor acquired title to two leasehold interests in Borden County, Texas:

a) Oil, Gas and Mineral Lease dated effective December 12, 2018, from Alyson Lea Collings, Jason Carroll Collins, Shawn Whipple Collins, Matthew Cole Collins, James Lewis Collins Jr., Allen Shane Co1lins, Michael Chad Collins and Margaret M. Collins, as Lessor, in favor of Three Streams Energy, LLC, as Lessee (the "Collins Lease"); and

b) Oil, Gas and Mineral Lease dated December 10, 2018, from TL Griffin Ranches, Ltd, as Lessor, in favor of Three Streams Energy, LLC (the "Griffin Lease" and, collectively with the Collins Lease, the "Leases").

7. Currently, there are two producing wells: Griffin 46 – 1H Well, API No. 42-033-32460, and Griffin 46-2H Well, API No. 42-033-32496 (collectively, the "Griffin Wells").

8. The Debtor acquired these Leases and the Griffin Wells from Three Streams Energy, LLC ("Three Streams"). An Assignment and Bill of Sale dated as of May 15, 2019 for the assignment of these interests was filed of record on September 16, 2019 in the appropriate county records of Borden County, Texas.

9. The Debtor acquired the Leases subject to the mineral lien claim of Alamo Pressure Pumping, LLC ("Alamo Pumping") as well as other mineral liens and claims. Alamo Pumping's lien claim was and is by far the largest claim against the Debtor's assets. Alamo Pumping provided extensive fracture stimulation and related completion services with respect to the Griffin Wells for Three Streams. The mineral lien claim of Alamo Pumping is not less than approximately $6.138 million.

10. The Debtor and Three Streams negotiated the Purchase and Sale Agreement which was effective as of May 15, 2019, but closed on or about September 13, 2019 (the "PSA"). Pursuant to the PSA the Debtor owns the Leases, the Griffin Wells, almost all of the production

extracted from the Griffin Wells and the proceeds of such production.[3]

11. In connection with the sale, Three Streams assigned to the Debtor its rights and obligations under the following agreements relating to the development and operation of the Wells: (1) that certain Participation Agreement dated December 10, 2018, and (2) a joint operating agreement (the "JOA") pursuant to which Crockett Operating, LLC ("Crockett") would serve, and currently serves, as the operator of the Wells. Since purchasing the Leases, the Griffin Wells have been continuously operated by Crockett under the JOA. Crockett was formed for the purpose of operating the Wells.

12. Shortly after the sale to the Debtor closed, on November 1, 2019, the Debtor entered into that certain Crude Oil Purchase Agreement with Sunoco Partners Marketing & Terminals, LP ("Sunoco") for the purchase of all of the oil and gas extracted from the Griffin Wells.

13. Under the Crude Oil Purchase Agreement, Sunoco is required to pay the Debtor for the oil and gas it purchases. The Debtor, in conjunction with Crockett, is then responsible for the payment of all vendor and other operational costs in connection with the Griffin Wells as well as addressing mineral liens and the underlying claims that have been asserted against the Griffin Wells. As operator, Crockett receives funds from the Debtor to operate the Griffin Wells. Crockett also receives $25,000 per month to serve as operator to the Griffin Wells.

14. Failure to maintain operations at the Griffin Wells and payment of vendors risks termination of the Leases for non-production and the attachment of additional vendor liens.

15. In addition, the Debtor outsources the daily operation of its administrative, bookkeeping, payroll, and controller services through a shared services agreement (the "Shared Services Agreement") between the Debtor and its parent company, Alamo Exploration &

---

[3] An unrelated third party, Harmonia Petroleum Operations, LLC ("Harmonia"), owns 0.1245% of the production of the Griffin Wells.

Production, LLC ("Alamo E&P"). The Share Services Agreement continues to be in effect.

**B.    Debtor Ownership and Affiliates**

16.    The Debtor is owned and managed by Alamo E&P, which holds 100% of the voting Class A Units. Seven Energy Investments, LLC holds 100% of the non-voting, non-managing Class B Units.

17.    Attached as **Exhibit A** is a diagram showing the ownership of the Debtor referenced in the Declaration.

**C.    Financial Background**

18.    Due to pending litigation which as halted cash flow into the Debtor, the Debtor does not have a traditional secured lender. In order to fund operations, the Debtor obtained secured financing from a related entity, Alamo Borden County III, LLC ("ABC III"). Specifically, ABC III provided the Debtor with $500,000 pursuant to a secured promissory note dated as of January 13, 2021, and subsequently amended the promissory notice to provide an additional $500,000 as of September 15, 2021. This loan bears interest at 12% per annum and remains outstanding in the approximate amount of $1,135,546. This loan is secured by a Mortgage, Deed of Trust, Assignment of Production, Security Agreement, and Financing Statement dated as of January 13, 2021 which secures the amounts owing under the promissory note with, among other things, the Griffin Wells, the production from the Griffin Wells, and the proceeds of such production.

**D.    Events Leading to Bankruptcy**

19.    This Chapter 11 Case is the result of interrelated factors. First, an entity known as Borden County Phase 1, LP ("BCP") asserts a competing claim to the Leases.  BCP alleges certain damages arising from events prior to the Debtor's ownership. Consequently, notwithstanding that the Debtor properly took ownership of the Working Interests, BCP claims it owns the entire

leasehold estate and is entitled to all of the production proceeds. BCP has not filed any interest in the appropriate county records. BCP sued the Debtor in the District Court of Borden County, Texas on or about June 9, 2020 (the "State Court Action") seeking to establish ownership and title in the Leases. The Debtor disputes these allegations and asserts that BCP has no ownership interest in the Wells or any assets of the Debtor.

20. Nonetheless and despite the Debtor continuing to fully perform under the Crude Oil Purchase Agreement by delivering oil to Sunoco, because of the State Court Action, Sunoco has been placing the proceeds from its purchases from the Griffin Wells that it was required to pay over to the Debtor in suspense. As of August 31, 2021, Sunoco was holding $5,936,833.19. The Debtor has full right to these proceeds.

21. Nevertheless, this suspense has forced the Debtor to rely on sources, including the loan with ABC III, other than the production proceeds to fund its operations. ABC III has informed the Debtor that is no longer willing to fund the Debtor's operations leaving the Debtor without access to any sources of capital to operate. The Debtor must therefore rely upon the proceeds of production from the Griffin Wells in order to operate the Griffin Wells and maintain the Leases. The Debtor plans to request this Court to direct Sunoco to release the funds held in suspense to allow the Debtor to fund its operations.

22. Ultimately, the State Court Action coupled with Sunoco's suspense of funds has placed the Debtor under extreme financial stress to pay its debts as they have come due in connection with the operations at the Griffin Wells. The ongoing operating demands and ownership dispute have led to a foreclosure action being brought by Alamo Pumping against the Debtor, among other parties, in the District Court of Borden County, Texas as of October 13, 2021.

23. Accordingly, based on these events, the Debtor is now seeking chapter 11 reorganization in order to address these issues.

## II. FIRST DAY RELIEF

24. On October 15, 2021, the Debtor sought voluntary relief under chapter 11 of the United States Bankruptcy Code and has continued to operate its business and manage its properties.

25. The Debtor filed the First Day Motions seeking to maintain and stabilize the Debtor's business operations and minimize the adverse effects of the commencement of this bankruptcy case, as well as expedite a swift and smooth restructuring of the Debtor's business and balance sheet. In connection with preparation for these bankruptcy proceedings, I reviewed each of the First Day Motions and I believe that the allegations contained in each are true and correct to the best of my knowledge, information, and belief. The requested relief is critical to the Debtor's ability to continue in operation, and therefore, necessary to avoid immediate and irreparable harm and maximize the return to their estates and creditors. The facts in support of the First Day Motions are detailed below.

### A. Cash Management Motion

*i. Debtor's Account Systems and Practices*

26. Prior to the Petition Date, in the ordinary course of its business, the Debtor managed the financial aspects of its business through, as defined below, a Cash Management System, the Account, and related processes. These account systems and practices are discussed more fully below.

27. In connection with the operation of its business, the Debtor manages its cash, accounts receivable, and payables through a cash management system (the "Cash Management

System") to efficiently collect, transfer, and disburse funds generated by its business operations. Specifically, the Debtor receives the proceeds generated by the Griffin Wells and disburses those proceeds directly or indirectly through Crockett to cover the operating costs of the Griffin Wells. The Cash Management System allows the Debtor to control and monitor funds and available cash, as well as keep current and accurate accounting records of all daily cash transactions.

28. The Debtor's regular Cash Management System was interrupted due to the suspense put in place by Sunoco, which prevented the Debtor from receiving the proceeds from the Griffin Wells. In conjunction with seeking approval of its Cash Management System, the Debtor must also request the release of the production proceeds to be used during the Chapter 11 Case.

29. As discussed above, the Debtor relies on the Shared Services Agreement with Alamo E&P for various of the Debtor's daily administrative obligations. Alamo E&P is well-acquainted with the cash needs and financial obligations of the Debtor's business.

30. In connection with its Cash Management System, the Debtor maintains a checking account ending in 7789 (the "Account") with UMB Bank, N.A. ("UMB"). The Debtor has directed UMB to, as of the Petition Date, refrain from making any payments on account of any pre-petition obligations owed by the Debtor without the Debtor's prior approval, which approval will only be granted with respect to payments authorized by an order of this Court. Similarly, all automatic payments have been cancelled to avoid payment of pre-petition obligations, and the Debtor has instructed UMB to not honor any pre-petition checks that had not cleared as of the Petition Date.

  ii. *The Debtor's Existing Business Forms*

31. In the ordinary course of business, the Debtor uses distinct correspondence and business forms, including, without limitation, letterhead, purchase orders, and invoices

(collectively, the "Business Forms") and will be seeking to continue to use all such Business Forms as they existed immediately prior to the Petition Date.

**B.     Motion to Use Funds**

32.    As set forth above, the State Court Action initiated by BCP prompted Sunoco to hold all funds due to the Debtor under the Crude Oil Purchase Agreement, notwithstanding that the Debtor properly took ownership of the Working Interests. Specifically, as of August 31, 2021, Sunoco had suspended payment of $5,936,833.19 (the "Escrowed Proceeds").

33.    The Debtor is seeking to receive, directly from Sunoco, the Escrowed Proceeds and all future proceeds generated from the sale of oil or gas production from the Griffin Wells attributable to the working interest owners (the "Future Proceeds" and, collectively with Escrowed Proceeds, the "Proceeds") that may come into Sunoco's possession. The Proceeds are the only possible source of funds for the Debtor's ongoing operations. The Debtor intends to receive the Proceeds from the Griffin Wells directly from Sunoco, account for such funds in its approved bank account and as disclosed in the necessary monthly operating reports, and use such funds in accordance with a proposed budget. The Debtor will refrain from making any payments on account of any pre-petition obligations owed by the Debtor without an order of this Court.

**C.     Critical Vendors Motion**

34.    Immediate payment of the Critical Vendors' claims is necessary to the Debtor's reorganization efforts and critical, considering the Debtor's business and the industry in which they operate as well as the loss of value to the Debtor's properties that would result from any material cessation of the work provided by the Critical Vendors.

35.    In order to be able to generate revenue from the Griffin Wells, the Debtor is dependent on a multitude of vendors who provide goods and/or services to the Debtor on a regular

basis. These goods and/or services are necessary to maintain the operations as well as the Debtor's legal rights to the Griffin Wells. The failure to pay Critical Vendors would likely result in these Critical Vendors refusing to provide their goods or services to the Debtor post-petition, or altering the credit terms the Debtor currently enjoys.

36. The Debtor reviewed accounts payable and the Debtor's pre-petition vendors to identify those vendors who, because of the goods or services they provide and the lack of relative availability of such goods or services from alternative sources, were essential to the Debtor's continued operations. The criteria used to identify vendors qualifying as "Critical Vendors" was the overall impact on the Debtor's business operations if the particular Critical Vendor ceased providing goods or services to the Debtor.

37. Once the Critical Vendors were identified, the Debtor estimated the total payments that would be necessary to ensure the continued supply of critical goods and services to the Debtor and further, considered (i) the Debtor's urgent need to continue to receive goods and/or services uninterrupted, (ii) its ability to find additional sources to provide the goods and/or services, and (iii) the likelihood that the Critical Vendor or an alternate vendor (if available) would extend trade terms post-petition despite the Debtor's failure to pay such vendors pre-petition outstanding trade debt.

38. Based upon those considerations, the Debtor identified four (4) vendors as Critical Vendors:

| **VENDOR** | **ADDRESS** | **ESTIMATED AMOUNT** |
|---|---|---|
| MidAmerican Energy Services, LLC | 4124 NW Urbandale Drive<br>Urbandale, IA 50322 | $15,000.00 |
| Apergy ESP Systems LLC | 19425 E. 54th Street<br>Broken Arrow, OK 74014 | $59,284.00 |
| Hodnetts Pumping Services LLC | 409 Guffee Rd.<br>Coahoma, TX 79511 | $1,600.00 |
| Noralta Technologies, Inc. | 9595 Six Pines Drive | $2,407.00 |

|  | Suite 8210<br>The Woodlands, TX 77380 |  |

39. In return for the paying the Critical Vendor claims, the Debtor will condition payment on the agreement of the individual Critical Vendor to continue supplying goods or services to the Debtor on a post-petition basis. The Debtor will propose terms consistent with the historical trade terms between the parties (the "Customary Trade Terms"). However, the Debtor may seek to negotiate different trade terms with any Critical Vendor, as a condition to payment of any Critical Vendor claim, to the extent the Debtor determines such trade terms are necessary to procure essential goods and/or services or is otherwise in the best interests of the Debtor's estate. Once agreed to and accepted by a Critical Vendor, such agreed terms shall govern the parties' post-petition trade relationship (the "Trade Agreement"). None of the Critical Vendors are insiders of the Debtor.

D. **Motion for Extension to File Schedules and Statements**

40. The analysis and compilation of the information for the Schedules and Statements will take additional time because: (i) there are other urgent demands upon the Debtor as a result of the filing of this case that will consume the time of the Debtor's limited personnel; (ii) many of the Debtor's liabilities may constitute contingent, unliquidated claims relating to obligations that are difficult to quantify; and (iii) the Debtor and its professionals need time to evaluate the information comprising the Schedules and Statements. The Debtor believes that an extension of fourteen (14) additional days will provide it with sufficient time in which to prepare and file the Schedules and Statements.

E. **Request for Expedited Consideration**

41. Due to the nature of the relief sought in the First Day Motions, expedited consideration is essential. The relief requested in the First Day Motions is necessary and

appropriate on an accelerated basis, including on an interim basis with respect to certain of the First Day Motions. If such relief is not considered and granted on such an accelerated basis, the Debtor risks substantial disruption to its ongoing operations, which could result in immediate and irreparable harm to the Debtor, its bankruptcy estate, and creditors. The need for an expedited hearing was not caused by lack of due diligence, act, or failure to act by the Debtor or its proposed counsel, but by the circumstances of the Chapter 11 Case.

### III.    CONCLUSION

42.    For the reasons stated herein and in each of the First Day Motions filed concurrently with the commencement of the Debtor's Case, I respectfully request that each of the First Day Motions be granted in its entirety, together with such other and further relief as this Court deems just and proper.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the Declaration, is to the best of my information and belief, true and correct.

Fort Worth, Texas, this 21st day of October, 2021.

*Shu Rau*

Shu Rau
Chief Executive Officer
Alamo Borden County 1, LLC

# EXHIBIT A

